HAMLIN, Justice ad Hoc
(dissenting on rehearing).
I respectfully dissent from the majority opinion for the reasons set forth in the original opinion of this Court, of which I was the author, and for the following additional reasons:
The United States Supreme Court in the cases of Michigan-Wisconsin Pipe Line Company v. Calvert (Panhandle Eastern Pipe Line Co. v. Calvert), 347 U.S. 157, 74 S.Ct. 396, 401, 98 L.Ed. 583, stated:
“ * * * the Court has therefore been forced to decide in many varied factual situations whether the application of a given state tax to a given aspect of interstate activity violates the Commerce Clause. * * * ” (Italics ours.)
And
“ * * * the incidence must be a more substantial economic factor than the movement of the gas from a local outlet of one owner into the connecting interstate pipeline of another. * * * »
In the instant matter, plaintiff purchased the gas herein involved from the plant of Cotton Valley Operators’ Committee. Plaintiff contends that fiths is for interstate transmission and i/sth for intrastate use. The gas is residue, liquid hydrocarbons having been removed in commercial *615 ■quantities. Plaintiff owns its metering equipment, and title to the gas passes at the point of entrance to the metering equipment. It is at this point that the tax is assessed, and it is not imposed after the gas passes into plaintiff’s pipeline, which originates near the plant of Cotton Valley Operators’ Committee in Webster Parish, Louisiana, and terminates at Okay, Howard County, Arkansas.
I cannot help but believe that the metering equipment is more than a local outlet. In my opinion, the taking of the gas by the plaintiff was separate and distinct from interstate transportation and would support the tax.[1]
The majority opinion relies in part on the case of United Fuel Gas Company v. Hallanan, 257 U.S. 277, 42 S.Ct. 105, 66 L.Ed. 234. This case involved a transportation tax and not a gas gathering tax as is herein involved. However, emphasis is laid upon the statement in that case to the effect that:
“ * * * the great body of the gas starts for points outside the State and goes to them. That the necessities of business require a much smaller amount destined to points within the State to be carried undistinguished in the same pipes does not affect the character of the major transportation. * # >t
I do not believe that 80% should be held to be “the great body of the gas” as- set forth in the United Fuel Gas Company case, supra. I feel that the State of Louisiana should not be deprived of taxing the 20% employed in intrastate commerce. Twenty percent, when dealing with a large amount of money or an appreciable volume of gas, is of great significance.
For these reasons, and for the reasons assigned in the original opinion, I respectfully dissent.

. “ ‘Gathering gas’ means the first taking or the first retaining of possession of gas produced in Louisiana for transmission through a pipe line, after the severance of such gas, and after the passage of such gas through any separator, drip, trap or meter that may be located at or near the well. In the ease of gas containing gasoline or liquid hydrocarbons that are removed or extracted in commercial quantities at a plant by scrubbing, absorption, compression, or any similar process, the term ‘gathering gas’ means the first taking or the first retaining of possession of such gas for transmission through a pipe line after such gas has passed through the outlet of such plant, provided that the license or tax hereby levied is not levied against or charged to any royalty interest of any lessor or vendee or assignee of such royalty interest.” LSA-R.S. 47:673, Act No. 11 of 1948.